**FILED**
October 17, 2022
KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABELINE DIVISION

| | | |
|---|---|---|
| FAIR OAKS APARTMENTS, LLC | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-00065-BU |
| | § | |
| ALLIED INSURANCE COMPANY | § | |
| OF AMERICA | § | |
| *Defendant.* | § | |

## DEFENDANT ALLIED INSURANCE COMPANY OF AMERICA'S ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

Defendant Allied Insurance Company of America ("Defendant" or "Allied") files this Original Answer and Defenses to Plaintiff's Original Petition, and would respectfully show as follows:

## I.   ANSWER

Defendant makes the following admissions and denials to Plaintiff Fair Oaks Apartments, LLC's ("Plaintiff") claims as authorized by Federal Rule of Civil Procedure 8(b):

## DISCOVERY CONTROL PLAN

1.     Paragraph 1 of Plaintiff's Original Petition concerns the level of discovery in this case under the Texas Rules of Civil Procedure and does not require a response from Defendant. Defendant submits that discovery in this case is governed by the Federal Rules of Civil Procedure.

## PARTIES

2.     Upon information and belief, Defendant admits Plaintiff is Fair Oaks Apartments, LLC, a limited liability company with its primary place of business in Taylor County, Texas. Defendant further admits that Plaintiff is represented by the Hodge Law Firm in the above-captioned lawsuit.

1

3.      Defendant admits that Nationwide Mutual Insurance Company is a foreign insurance company registered and which has appeared and answered in this case. Answering further, Defendant asserts that Nationwide Mutual Insurance Company did not issue the insurance policy made the basis of this lawsuit and therefore lacks contractual privity with Plaintiff. Allied Insurance Company of America issued the policy forming the basis of this lawsuit.

## JURISDICTION AND VENUE

4.      Defendant admits that jurisdiction is proper in the United States District Court for the Northern District of Texas, Abilene Division. Defendant denies Plaintiff is entitled to the relief sought in Paragraph 4 of its Original Petition.

5.      Defendant admits that the United States District Court for the Northern District of Texas, Abilene Division has jurisdiction over it in this case.

6.      Defendant admits that venue is proper in the Abilene Division of the United States District Court for the Northern District of Texas because the property at issue in this suit is situated in Taylor County, Texas, which is within the Abilene Division of the Northern District of Texas.

## FACTS

7.      Defendant admits that it issued a policy of insurance to Plaintiff bearing policy number ACP BPOL 3019402005 with an effective policy period of July 8, 2020 to July 8, 2021 (the "Policy").

8.      Upon information and belief, Defendant admits that Plaintiff owns the property insured under the Policy, which is located at 502 N. Willis St., Abilene, Texas 79603 (the "Property").

9.      Defendant admits it sold the Policy insuring the Property to Plaintiff.

10.     Defendant admits there was a winter weather event referred to as Winter Storm Uri in the State of Texas during February 2021. Defendant denies the remaining allegations in Paragraph 10 of Plaintiff's Original Petition.

11.     Defendant admits it received a claim from Plaintiff under the Policy to which Defendant assigned claim number 603330-GL (the "Claim"). Defendant denies the remaining allegations contained in Paragraph 11 of Plaintiff's Original Petition.

12.     Defendant admits that Plaintiff made a claim for damages under the Policy.

13.     Defendant admits that it engaged Independent Adjuster Mark Kelley and Engineer Drew Lindemann to inspect the Property. Defendant admits it has not issued payment to Plaintiff for damages under the Policy pursuant to applicable policy exclusions,  including but not limited to, an exclusion for covered losses for properties that are vacant for more than sixty days before a loss. Defendant denies the remaining allegations set forth in paragraph 13 of Plaintiff's Original Petition.

14.     Upon information and belief, Defendant admits that Plaintiff engaged public adjusters InsuranceBusters.net to inspect the Property and write an estimate. Defendant denies the remaining allegations set forth in paragraph 14 of Plaintiff's Original Petition.

15.     Defendant admits that it received an estimate dated April 26, 2021, from Cal Spoon, estimating $3,008,598.96 in allegedly covered damages. Defendant denies receiving a sworn proof of loss from Cal Spoon on April 27, 2021. Defendant denies all other allegations contained in Paragraph 15 of Plaintiff's Original Petition.

16.     Defendant admits that Independent Adjuster Mark Kelley and Cal Spoon conducted a joint inspection of the Property. Defendant admits receiving a written estimate from Cal Spoon

dated May 5, 2021, indicating $3,228,743.26 in allegedly covered damages. Defendant denies all other allegations contained in Paragraph 15 of Plaintiff's Original Petition.

17.      Defendant admits that it engaged Drew Lindemann, P.E., of Envista Forensics to conduct an investigation of the Property. Defendant denies all other allegations contained in Paragraph 17 of Plaintiff's Original Petition.

18.      Defendant denies all allegations contained in Paragraph 18 of Plaintiff's Original Petition.

19.      Defendant denies all allegations contained in Paragraph 19 of Plaintiff's Original Petition.

20.      Defendant denies all allegations contained in Paragraph 20 of Plaintiff's Original Petition

21.      Defendant denies all allegations contained in Paragraph 21 of Plaintiff's Original Petition. Defendant denies Plaintiff is entitled to the relief sought in Paragraph 21 of Plaintiff's Original Petition.

22.      Defendant denies all allegations contained in Paragraph 22 of Plaintiff's Original Petition

23.      Defendant denies all allegations contained in Paragraph 23 of Plaintiff's Original Petition.

24.      Defendant denies all allegations contained in Paragraph 24 of Plaintiff's Original Petition.

25.      Defendant denies all allegations contained in Paragraph 25 of Plaintiff's Original Petition.

26.     Defendant denies all allegations contained in Paragraph 26 of Plaintiff's Original Petition.

27.     Defendant denies all allegations contained in Paragraph 27 of Plaintiff's Original Petition.

28.     Defendant denies all allegations contained in Paragraph 28 of Plaintiff's Original Petition.

29.     Defendant denies all allegations contained in Paragraph 29 of Plaintiff's Original Petition.

30.     Defendant denies all allegations contained in Paragraph 30 of Plaintiff's Original Petition.

31.     Defendant denies all allegations contained in Paragraph 31 of Plaintiff's Original Petition.

32.     Defendant denies all allegations contained in Paragraph 32 of Plaintiff's Original Petition.

33.     Defendant denies all allegations contained in Paragraph 33 of Plaintiff's Original Petition.

## CAUSES OF ACTION

34.     Defendant denies all allegations contained in Paragraph 34 of Plaintiff's Original Petition.

## BREACH OF CONTRACT

35.     Paragraph 35 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Answering further, Defendant admits that the Policy was in effect between Defendant and Plaintiff from July 8, 2020 to July 8, 2021.

36.     Defendant denies all allegations contained in Paragraph 36 of Plaintiff's Original Petition.

37.     Defendant denies all allegations contained in Paragraph 37 of Plaintiff's Original Petition.

38.     Defendant denies all allegations contained in Paragraph 38 of Plaintiff's Original Petition.

39.     Defendant denies all allegations contained in Paragraph 39 of Plaintiff's Original Petition.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

40.     Defendant denies all allegations contained in Paragraph 40 of Plaintiff's Original Petition.

41.     Defendant denies all allegations contained in Paragraph 41 of Plaintiff's Original Petition.

42.     Defendant denies all allegations contained in Paragraph 42 of Plaintiff's Original Petition.

43.     Defendant denies all allegations contained in Paragraph 43 of Plaintiff's Original Petition.

44.     Defendant denies all allegations contained in Paragraph 44 of Plaintiff's Original Petition.

45.     Defendant denies all allegations contained in Paragraph 45 of Plaintiff's Original Petition.

46.     Paragraph 46 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 46 of Plaintiff's Original Petition. Defendant denies Plaintiff is entitled to the relief

sought in Paragraph 46 of Plaintiff's Original Petition.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

47.     Defendant admits that the Claim was submitted under the Policy. Defendant denies

the remaining allegations set forth in Paragraph 47 of Plaintiff's Original Petition.

48.     Paragraph 48 of Plaintiff's Original Petition states a legal conclusion and, therefore,

does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 48 of Plaintiff's Original Petition.

49.     Paragraph 49 of Plaintiff's Original Petition states a legal conclusion and, therefore,

does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 49 of Plaintiff's Original Petition.

50.     Paragraph 50 of Plaintiff's Original Petition states a legal conclusion and, therefore,

does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 50 of Plaintiff's Original Petition.

51.     Paragraph 51 of Plaintiff's Original Petition states a legal conclusion and, therefore,

does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 51 of Plaintiff's Original Petition.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

52.     Defendant denies all allegations contained in Paragraph 52 of Plaintiff's Original

Petition.

53.     Paragraph 53 of Plaintiff's Original Petition states a legal conclusion and, therefore,

does not require a response from Defendant. Defendant otherwise denies all allegations contained

in Paragraph 53 of Plaintiff's Original Petition.

54.     Paragraph 54 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 54 of Plaintiff's Original Petition.

## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

55.     Defendant denies all allegations contained in Paragraph 55 of Plaintiff's Original Petition.

56.     Paragraph 56 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 56 of Plaintiff's Original Complaint.

57.     Paragraph 57 of Plaintiff's Original Petition states several legal conclusions and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 57 of Plaintiff's Original Petition, including subparagraphs a) through e).

58.     Defendant denies all allegations contained in Paragraph 58 of Plaintiff's Original Petition.

## COMMON LAW FRAUD

59.     Defendant denies all allegations contained in Paragraph 59 of Plaintiff's Original Petition.

60.     Paragraph 60 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 60 of Plaintiff's Original Petition.

61.     Paragraph 61 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 61 of Plaintiff's Original Petition.

62.     Paragraph 62 of Plaintiff's Original Petition states a legal conclusion and, therefore, does not require a response from Defendant. Defendant otherwise denies all allegations contained in Paragraph 62 of Plaintiff's Original Petition.

## DAMAGES

63.     Defendant denies all other allegations contained in Paragraph 63 of Plaintiff's Original Petition. Defendant denies Plaintiff is entitled to the relief sought in Paragraph 63 of Plaintiff's Original Petition.

64.     Defendant denies all allegations contained in Paragraph 64 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 64 of Plaintiff's Original Petition.

65.     Defendant denies all allegations contained in Paragraph 65 of Plaintiff's Original Petition for lack of sufficient information and belief. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 65 of Plaintiff's Original Petition.

66.     Defendant denies all allegations contained in Paragraph 66 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 66 of Plaintiff's Original Petition.

67.     Defendant denies all allegations contained in Paragraph 67 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 67 of Plaintiff's Original Petition.

68.     Defendant denies all allegations contained in Paragraph 68 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 68 of Plaintiff's Original Petition.

69.    Defendant denies all allegations contained in Paragraph 69 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 69 of Plaintiff's Original Petition.

70.    Defendant denies all allegations contained in Paragraph 70 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 70 of Plaintiff's Original Petition.

71.    Defendant denies all allegations contained in Paragraph 71 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 71 of Plaintiff's Original Petition.

72.    Defendant denies all allegations contained in Paragraph 72 of Plaintiff's Original Petition. Defendant further denies Plaintiff is entitled to the relief sought in Paragraph 72 of Plaintiff's Original Petition.

73.    Defendant admits Plaintiff is not making any claims for relief under federal law. Answering further, Defendant admits that this Court has diversity jurisdiction over this case.

## JURY DEMAND

74.    Paragraph 74 of Plaintiff's Original Petition includes a jury demand, which does not require a response by Defendant.

## REQUEST FOR DISCLOSURE

75.    Paragraph 75 of Plaintiff's Original Petition includes a Request for Disclosure pursuant to Rule 194 of the Texas Rules of Civil Procedure, which does not require a response by Defendant. Answering further, the Federal Rules of Civil Procedure governs discovery in this case.

## PRAYER

76.     Defendant denies the allegations set forth in the Prayer of Plaintiff's Original Petition. Defendant also denies Plaintiff is entitled to the relief sought in the Prayer of Plaintiff's Original Petition.

## II.    DEFENSES

77.     In addition to the foregoing specific denials, Defendant asserts, without limitation, the following defenses:

### First Defense
### Policy Provisions

78.     Plaintiff cannot recover, in whole or in part, on its breach of contract claim, and consequently on any of the other causes of action alleged in its Original Petition, because the insurance policy issued by Defendant to Plaintiff contains exclusions and provisions negating coverage, in whole or in part, for the damages alleged by Plaintiff.  Defendant's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy and Defendant relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially applicable policy provisions include, but are not limited to:

### PREMIER BUSINESSOWNERS POLICY
### PREMIER OFFICE
### COMMON DECLARATOINS

Policy Numbers:     **ACP   BPOL         3019402005**

Named Insured:     **FAIR OAKS APTS LLC**

\*\*\*

Policy Period:     Effective From **07-08-20**     To **07-08-21**
                   12:01 AM Standard Time at your principal place of business

\*\*\*

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

\*\*\*

**SCHEDULE OF NAMED INSUREDS**
\*\*\*
Named Insured:
**FAIR OAKS APTS LLC**
\*\*\*

# PREMIER OFFICE
# PROPERTY DECLARATIONS

\*\*\*
Description of Premises Number: **001**        Building Number: **001**
Premises Address: **502 N WILLIS ST ABILENE TX 79603-6910**
\*\*\*
WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a **$25,000** Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building – Actual Cash Value | **$3,949,484** |
| Business Personal Property – Replacement Cost | **$51,500** |

\*\*\*
**ADDITIONAL COVERAGES – the Coverage Form Includes other Additional Coverages not shown.**
\*\*\*

| | |
|---|---|
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $100000 policy aggregate) | **$5,000** |

\*\*\*

| | |
|---|---|
| Increased Cost of Construction | **NOT INCLUDED** |

\*\*\*

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown on the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

### A. COVERAGES
We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.
\*\*\*

**3. COVERED CAUSES OF LOSS**
> This Coverage Form insures against direct physical loss unless the loss is:
>> a. Excluded in Section B. EXCLUSIONS;
>> b. Limited in paragraph A.4. LIMITATIONS in this section; or
>> c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

**4. LIMITATIONS**
a. We will not pay for loss or damage to:
***

> (2) Hot water boilers or other water heating equipment caused or resulting from any condition or event inside such boilers or equipment other than an explosion.

***

> (6) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>> (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
>> (b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

***
**5. ADDITIONAL COVERAGES**
> **a. Debris Removal**
> (1) We will pay your expense to remove debris of Covered Property and debris from the property of others when such debris is caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

> (2) The most we will pay under the Debris Removal Additional Coverage is 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

> This Debris Removal Additional Coverage will not increase the Limits of Insurance provided by this policy.
> ***

> (3) This Debris Removal Additional Coverage does not apply to costs to:
>> (a) Remove deposits of mud or earth from the grounds of the described premises;
>> (b) Extract "pollutants" from land or water;
>> (c) Remove, restore or replace polluted land or water; or
>> (d) Extract "pollutants" from Covered Property.
>>> ***
> **f. Water Damage, Other Liquids, Powder Or Molten Material Damage**

(1) If a covered loss to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

HOWEVER, we will not pay for a loss caused by or resulting from water or other liquid, powder or molten material if the system or appliance in which the water or other substance escapes from is located off of the described premises.

(2) We will not pay the cost to repair any defect that caused the loss or damage except as provided in Equipment Breakdown Additional Coverage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

 (a) Results in discharge of any substance from an automatic fire protection system; or

 (b) Is directly caused by freezing.

(3) This Water Damage Additional Coverage will not increase the Limits of Insurance provided in this policy.

\*\*\*

**m. Increased Cost of Construction – Damaged Property**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damaged by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (8) of this Increased Cost of Construction – Damaged Property Additional Coverage.

(3) The ordinance or law referred to in paragraph (2) of this Increased Cost of Construction – Damaged Property Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Increased Cost of Construction – Damaged Property Additional Coverage, we will not pay any costs due to an ordinance or law that:

 (a) You were required to comply with before the loss, even when the building was damaged; and

 (b) You failed to comply with.

(5) Under this Increased Cost of Construction – Damaged Property Additional Coverage, we will not pay for:

 (a) The enforcement of, or compliance with, any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet rot or dry rot;

 (b) Any costs associated with the enforcement of, or compliance with, any ordinance or law which requires any insured to test for, monitor, clean

14

up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot;

(6) The most we will pay under this Increased Cost of Construction – Damaged Property Additional Coverage for each described building insured under this Coverage Form is $25,000.

(7) Under this Increased Cost of Construction – Damaged Property Additional Coverage:

    (a) We will not pay any costs:

        (i)    until the property is actually repaired or replaced at the same described premises or another premises; and

        (ii)   unless the repairs or replacement are made as soon as possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

\*\*\*

### r. Back Up Of Sewer Or Drain Water Damage

(1) For the purpose of this Back Up Of Sewer Or Dain Water Damage Additional Coverage the following definition is added;

"Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

    (a) The unusual and rapid accumulation or runoff of surface waters from any source;

    (b) The overflow of inland or tidal waters; or

    (c) Waves, tides or tidal waves.

(2) We will pay for loss of or damage to Covered Property caused by water that backs up or overflows from a sewer or drain pipe, sump pump well or similar device designed to prevent overflow seepage or leakage of subsurface water.

HOWEVER, we will not pay for loss or damage that results from:

\*\*\*

    (c) An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain pipe free from obstructions; or . . .

    \*\*\*

    (e) Damage that is caused by the breaking apart or cracking of a water or sewer pipe that is located off of the described premises.

\*\*\*

### t. Limited Coverage for Fungi, Wet Rot Or Dry Rot

(1) The coverage described in paragraphs t.(2) and t.(6) only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

15

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **a.  Ordinance Or Law**
   The enforcement of, or compliance with, any ordinance or law:
   (1)    Regulating the construction, use or repair of any property; or
   (2)    Requiring the tearing down of any property, including the cost of removing its debris; or
   (3)    Requiring the removal or disposal of "pollutants."

   This Ordinance Or Law Exclusion applies whether the loss results from:

   (1)    An ordinance that is enforced even if the property has not been damaged; or
   (2)    The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal if its debris, following a physical loss to the property.

   **b. Earth Movement**
   ***
   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground service.

   **e. Utility Services**
   The failure of power, communication, water or other utility service supplied to the  described premises, however caused, if the failure occurs away from the described premises.

16

Failure of any utility service includes lack of sufficient capacity and reduction in supply.
Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.
***

**g. Water**
(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
(2) Mudslide or mudflow:
(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain pipe, sump, sump pump or related equipment, except as provided under the Back Up Of Sewer or Drain Water Damage Additional Coverage;
(4) Water under the ground surface pressing on, or flowing or seeping through:
      (a) Foundations, walls, floors or paved surfaces;
      (b) Basements, whether paved or not; or
      (c) Doors, windows or other openings; or
(5) Waterborne material carried or otherwise moved by any of the water referred to in paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.
(6) Water that overflows from any plumbing fixture because the water is unable to enter into a drain pipe through any interior or exterior drain, drain strainer, catch basin, roof drain, scupper, or similar device designed to channel water from a plumbing fixture, roof, floor or other surface area.
(7) Discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off of the described premises and is part of a municipal water supply system or municipal sanitary sewer system.

This exclusion applies regardless of whether any of the above, in paragraphs (1) through (7), is caused by an act of nature or is otherwise caused.
***
But if any of the above paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

**h. Fungi, Wet Rot Or Dry Rot**
Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.
But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".
***

17

2.  We will not pay for loss or damage caused by or resulting from any of the
following:

\*\*\*

**b. Consequential Losses**

Delay, loss of use or loss of market.

\*\*\*

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing,
heating, air conditioning or other equipment (except fire protective systems) caused
by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not
maintained.

\*\*\*

**j. Pollutants**

We will not pay for loss or damage caused by or resulting from the discharge,
dispersal, seepage, migration, release or escape of "pollutants" unless the discharge,
dispersal, seepage, migration, release or escape is itself caused by any of the
"specified causes of loss". But if the discharge, dispersal, seepage, migration,
release or escape of "pollutants" results in a "specified cause of loss", we will pay
for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property
from further damage at and after the time of loss.

**l. Other Types Of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any
quality in property that causes it to damage or destroy itself;

\*\*\*

(4) [MODIFIED BY ENDORSEMENT];

\*\*\*

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal
force, except as provided under the Equipment Breakdown Additional Coverages.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature;

\*\*\*

But if an excluded cause of loss that is listed in paragraphs (1) through (7) above
results in a "specified cause of loss", "accident" or building glass breakage, we will
pay for the loss or damage caused by that "specified cause of loss", accident" or
building glass breakage.

\*\*\*

**p. Leakage or Seepage**

Constant or repeated seepage or leakage of water or steam, or the presence or
condensation of humidity, moisture or vapor, whether continuous or intermittent
from any:

18

(1) Heating, air conditioning or refrigerating system;
(2) Domestic appliance; or
(1) Plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture.

3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a through B.3.c. But if an excluded cause of loss that is listed in B.3.a through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### a. Weather Conditions
Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph B.1. above to produce the loss or damage.

### b. Acts or Decisions
Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

### c. Negligent Work
Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;
of part or all of any property on or off the described premises.
\*\*\*

## C. LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations, except as otherwise provided in this Section.
2. The limits applicable to Additional Coverages are in addition to the Limits of Insurance only if so indicated in that Section of this Coverage Form.
3. The limits applicable to the Coverage Extensions are in addition to the limits of Insurance.
\*\*\*

## D. DEDUCTIBLES

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

\*\*\*

## E. PROPERTY LOSS CONDITIONS

\*\*\*

**2. Appraisal**
(MODIFIED BY ENDORSEMENT)

**3. Duties In The Event Of Loss Or Damage**
   a.  You must see that the following are done in the event of loss of or damage to Covered Property:

\*\*\*

    (2) (MODIFIED BY ENDORSEMENT)

    (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

    (4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

       HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

    (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

    (6) As often as may be reasonably required, permit us to inspect the damaged property and examine your books and records, including financial records and tax returns.

       Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    (7) (MODIFIED BY ENDORSEMENT)

    (8) Cooperate with us in the investigation or settlement of the claim.

\*\*\*

   b.  We may examine any insured or their employee under oath, while not in the presence of any other insured or employee, at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option an expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then at our request your answers under oath must be signed under penalty of perjury.

4. **Legal Action Against Us**
(MODIFIED BY ENDORSEMENT)

5. **Loss Payment**
In the event of loss or damage covered by this policy:
   a.  At our option, we will either:
      (1) Pay the value of lost or damaged property as described in e. below;
      (2) Pay the cost of repairing or replacing the lost or damaged property;
      (3) Take all of any part of the property at an agreed or appraised value; or
      (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.
   b.  The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of, or compliance with, any ordinance or law regulating the construction, use or repair of any property.
   c.  (MODIFIED BY ENDORESEMENT)
   d.  We will not pay you more than your financial interest in the Covered Property.
   e.  Except as provided in (2) through (9) below, we will determine the value of Covered Property as follows:
      (1) At replacement cost without deduction for depreciation, subject to the following:
         (a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts, subject to E.5.b. above:
            (i) The Limit of Insurance under this policy that applies to the lost or damaged property;
            (ii) The cost to replace, on the same premises, the lost or damaged property with other property:
               i.  Of comparable material and quality; and
               ii.  Used for the same purpose; or
            (iii)  The amount that you actually spend that is necessary to repair or replace the lost or damaged property.
        \*\*\*
         (c) We will not pay on a replacement cost basis for any loss or damage:
            (i)   Until the lost or damaged property is actually repaired or replaced; and

           (ii)     Unless the repairs are made as soon as reasonably possible after the loss or damage.

However, if your loss qualifies for payment on a replacement cost basis and the cost of repair or replacement is $2,500 or less, we will pay the cost to repair or replace, after the application of the deductible and without deduction for depreciation.

(2) If the "Actual Cash Value – Buildings" option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at "actual cash value."

(3) The following property at "actual cash value";

    (a) Used or second-hand merchandise held in storage or for sale

    (b) Property of others, other than leased personal property to have a contractual responsibility to insure, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or service furnished or arranged by you on personal property of others;

    (c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

    (d) Manuscripts; and

    (e) Works of art, antiques or rare articles, including but not limited to etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

\*\*\*

## 8. Vacancy

### a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

    (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

    (ii) Used by the building owner to conduct customary operations.

\*\*\*

   b.  **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

    (a) Vandalism;

    (b) Sprinkler leakage, unless you have protected the system against freezing;

    (c) Building glass breakage;

    (d) Water damage, including damage that is caused by or resulting from freezing;

    (e) Theft; or

    (f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. PROPERTY GENERAL CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

\*\*\*

   4. **Policy Period, Coverage Territory**

Under this form:

a. We cover loss or damage commencing:

      (1) During the policy period shown in the Declarations…

\*\*\*

## H. PROPERTY DEFINITIONS omitted to comport with examples.

\*\*\*

2. **"Actual Cash Value"** means the cost to repair or replace Covered Property, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

\*\*\*

11. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

\*\*\*

20. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

\*\*\*

23. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

\*\*\*

> c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.
>
> HOWEVER, the following is not considered water damage;
>
> \*\*\*
>
> (2) Discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off of the described premises and is part of a municipal water supply system or municipal sanitary sewer system.

\*\*\*

## PREMIER BUSINESSOWNERS
## COMMON POLICY CONDITIONS
\*\*\*

## C. CONCEALMENT, MISREPRESENTATION OR FRUAD

1. This policy is void in its entirety in any case of fraud, at any time, by you or your representative as it relates to this policy.

2. This policy is also void if you, your authorized representative or any other insured, at any time, conceal or misrepresent any material fact, or violate any material warranty, concerning:

   a. This policy, including your application for this policy;
   b. The Covered Property;
   c. Your interest in the Covered Property; or
   d. A claim under this policy.

3. We also have the right to rescind this policy based upon any other grounds provided by law.

\*\*\*

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

24

## TEXAS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS
PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

***

D. **AMENDMENTS TO THE PROPERTY COVERAGE FORM**

1.  Under Section B. EXCLUSIONS, in paragraph 2., the following amendments are made:

***

b. In exclusion l. Other Types of Loss, paragraph (4) is replaced by the following:

(4) Settling, cracking, shrinking, bulging, expansion or contraction;

2. Under Section E. PROPERTY LOSS CONDITIONS:

a. Condition 2. Appraisal is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

(1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

(a) You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Condition; and

(b) We will still retain our right to deny the claim.

b. In Condition 3. Duties In The Event Of Loss Or Damage, is amended as follows:

(1) Paragraph **a.(2)** is replaced by the following:

(2) Give us prompt notice of the loss or damage. Include a description of the property involved. . .

(2) Paragraph a.(7) is replaced by the following:

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

c. Condition 4. Legal Action Against Us is replaced by the following, except as provided below:

**LEGAL ACTION AGAINST US**

(1) No one may bring a legal action against us under this policy unless:

(a) There has been full compliance with all of the terms of this insurance, and

(b) The action is brought within 2 years and one day from the date the cause of action first accrues. A cause of action first accrues on the date of the initial breach of our contractual duties alleged in the action.

\*\*\*

79.     The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

**Second Defense**
**Failure of Conditions Precedent**

80.     Plaintiff has failed to comply with one or more provisions of the Policy and, therefore, is precluded from bringing suit to enforce the Policy. The policy expressly states:

**LEGAL ACTION AGAINST US**

(1) No one may bring a legal action against us under this policy unless:

(a) There has been full compliance with all of the terms of this insurance, and

(b) The action is brought within 2 years and one day from the date the cause of action first accrues. A cause of action first accrues on the date of the initial breach of our contractual duties alleged in the action.

81.     Specifically, Plaintiff has failed to:

(2) Give us prompt notice of the loss or damage. Include a description of the property involved. . . .

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

(6) As often as may be reasonably required, permit us to inspect the damaged property and examine your books and records, including financial records and tax returns.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

***

82.     In addition, the Policy excludes water damage that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing unless Plaintiff does its "best to maintain heat in the building or structure" or "drain[s] the equipment and shut off the supply if the heat is not maintained."

83.     Answering further, Plaintiff failed to take all reasonable steps to protect the Property from further damage, as the Property was vacant for over a year before Plaintiff's alleged date of loss, and there had been no heat maintained in the Property for over a year before Plaintiff's alleged date of loss.

84.     Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing suit against Defendant.

**Third Defense**
**Failure to Mitigate/Contribution**

27

85.     Plaintiff is barred from any recovery from Defendant, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages and its contribution to its own alleged damages. This includes, but is not limited to, Plaintiff's failure to maintain heat in the Property, Plaintiff's failure to make properly maintain the Property, and Plaintiff's decision to keep the Property vacant for more than one year prior to the subject loss.

### Fourth Defense
### No Breach of Policy

86.     Plaintiff's claim has been properly investigated, adjusted, and evaluated. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including violation(s) of the Texas Insurance Code, Texas Deceptive Trade Practices Act, or breach of the common law duty of good faith and fair dealing, and common law fraud.

87.     Answering further, Defendant is not in breach of the Policy because the Policy includes a Vacancy Provision which states: "If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs: (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss: . . . (d) Water damage, including that is caused by or resulting from freezing." Therefore, Defendant properly complied with the terms of the Policy by not issuing Policy benefits in accordance with this Vacancy Provision.

### Fifth Defense
### Lack of Coverage Precludes Extra-Contractual Liability

88.     The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code, DTPA, and the common-law duty of good faith and fair dealing.  Because Plaintiff's allegations are generally based upon Defendant's alleged

failure to timely pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes the extra-contractual claims against Defendant as a matter of law.

### Sixth Defense
### *Bona Fide* Dispute

89.    Under Texas law, an insured bringing an action against its insurer for an alleged breach of a duty of good faith and fair dealing, whether under the common law or as authorized by statute, must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, Defendant's liability was not "reasonably clear."  In other words, nothing more than a *bona fide* coverage dispute exists between the parties, which does not permit Plaintiff to recover extra-contractual damages in this case.

### Seventh Defense
### Deductible

90.    To the extent any covered damage to the Covered Property is found by the factfinder to be the result of the weather event as alleged in Plaintiff's Original Petition, which is denied, Plaintiff's recovery is subject to the $25,000 Property Coverage deductible as shown on the Property Declarations page of the Policy.

### Eighth Defense
### Loss Payment Provisions

91.    Defendant relies on the Loss Payment provisions set forth in the relevant insurance policy limiting loss payments to actual cash value except as set forth in the Policy.

### Ninth Defense
### Limits of Liability

92.    Any recovery by Plaintiff is subject to the applicable policy limits set forth previously. Additionally, Plaintiff may not recover more than its financial interest in the Property.

**Tenth Defense**
**Fortuity Doctrine**

93.    Plaintiff's coverage under the Policy is precluded and the Plaintiff was, or should have been, aware of an ongoing loss or known loss when the Policy was purchased.

**Eleventh Defense**
**Excessive Demand**

94.    Allied asserts that Plaintiff is not entitled to attorney's fees as Plaintiff has asserted excessive demands. Plaintiff sent a demand letter addressed to "Nationwide Insurance Company" dated October 21, 2022 regarding the subject claim in which Plaintiff's counsel demanded $3,008,598.96 for "actual damages, attorney fees and penalties and interest on the claim if the claim is settled pre-suit." Plaintiff's counsel stated that if the amount demanded was not paid and suit was filed, its demand would increase to $9,028,796.88 and the demand would "include damages for bad faith, violations of the insurance code as well as attorney fees and interest." Plaintiff has acted unreasonably and in bad faith by demanding monies to which Plaintiff is not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive.

**Twelfth Defense**
**Statutory Limitations for Punitive Damages**

95.    Any recovery by Plaintiff for punitive damages would be subject to the limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as all other statutory damage caps provided by law.

**Thirteenth Defense**
**Due Process and Equal Protection**

96.     To the extent Plaintiff seeks punitive damages, Defendant invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution.   Defendant affirmatively pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

97.     To the extent Plaintiff seeks punitive damages, Defendant asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Fourteenth Defense**
**<u>Plaintiff Failed to Comply with Notice Requirements of Tex. Ins. Code § 542A.003</u>**

98.     Chapter 542A of the Texas Insurance Code applies to Plaintiff's lawsuit as it is an action on a claim under an insurance policy covering real property that arises from alleged storm damage. Plaintiff failed to give proper notice under Tex. Ins. Code § 542A.003, precluding or limiting any right Plaintiff may have to recover attorneys' fees. Specifically, Tex. Ins. Code § 542A.003 requires that Plaintiff provide written notice to Defendant not later than the 61st day before the date Plaintiff files an action to which Chapter 542A applies that must include:

(1)     a statement of the acts or omissions giving rise to the claim;

(2)     the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property; and

(3)     the amount of reasonable and necessary attorney's fees incurred by the claimant, calculated by multiplying the number of hours actually worked by the claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services.

99.    Furthermore, if an attorney or other representative gives the notice required under Chapter 542A, the attorney or representative must:

(1)    provide a copy of the notice to the claimant; and

(2)    include in the notice a statement that a copy of the notice was provided to the claimant.

100.    Plaintiff sent a letter addressed to "Nationwide Insurance Company" dated October 21, 2021 that seeks $3,009,598.96 for "actual damages, attorney fees and penalties and interest on the claim if the claim is settled pre-suit." Plaintiff's counsel stated that if the amount demanded was not paid and suit was filed, its demand would increase to $9,028,796.88 and the demand would "include damages for bad faith, violations of the insurance code as well as attorney fees and interest." However, Plaintiff's counsel did not state the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property.  In addition, this letter was not addressed to Allied Insurance Company of America. Plaintiff's demand does not provide presuit notice as required by Tex. Ins. Code § 542A.003.Therefore, Plaintiff did not comply with Tex. Ins. Code § 542A.003 Accordingly, pursuant to Tex. Ins. Code §542A.007(d), the Court may not award Plaintiff any attorney's fees incurred after May 16, 2022, the date that the incorrectly named entity, Nationwide Mutual Insurance Company, first filed its Original Answer pleading this defense.

101.    In the alternative, to the extent the referenced demand letter is deemed timely and complaint with the presuit notice requirements under Chapter 542A, the provisions of § 542A.007(a) and (c) may limit or preclude recovery of attorney's fees based on the excessive amounts demanded by Plaintiff.

**Fifteenth Defense**
**Failure to Mitigate**

102.    Plaintiff's causes of action against Defendant are barred, in whole or in part, because Plaintiff has failed to take reasonable action(s) to mitigate damages. This includes, but is not limited to, Plaintiff or Plaintiff's authorized agents or representatives' failure to properly maintain the Property and failure to maintain heat at the Property.

**Sixteenth Defense**
**<u>Punitive Damage Limitation</u>**

103.    With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code § 41.002–41.009.

**Seventeenth Defense**
**<u>Tolling of Penalties</u>**

104.    Plaintiff's live pleading seeks recovery of statutory penalties under Chapter 542 of the Texas Insurance Code, which regulates the prompt payment of claims and provides a per annum penalty of five percent plus the interest rate determined under Section 304.003 of the Finance Code for proved violations in cases arising under Chapter 542A of the Insurance Code, such as the current case. Defendant denies liability under this statute; however, if upon final hearing and trial, the fact finder determines that there have been violations of this statute, Defendant urges the Court to determine that all penalties during any delays attributable to Plaintiff or Plaintiff's attorneys should be tolled.

**Eighteenth Defense**
**<u>Offset and Credit</u>**

33

105.    Plaintiff's damages, if any, must be offset by the amount of applicable policy deductible, and by any credit for indemnity amounts paid to or on behalf of the Plaintiff. Defendant will seek any and all available offsets and credits to which Defendant is entitled under law.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Allied Insurance Company of America respectfully prays that Plaintiff takes nothing from Defendant and that Defendant be awarded its reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
C Daniel DiLizia
Texas Bar No. 24099800
ddilizia@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT**

34

## <u>CERTIFICATE OF SERVICE</u>

  This is to certify that a true and correct copy of the foregoing instrument has been served via regular mail this the 17th day of October, 2022 to:

   Shaun W. Hodge
   Jahan V. Guram
   The Hodge Law Firm, PLLC
   1301 Market Street
   Galveston, Texas 77550
   shodge@hodgefirm.com
   jguram@hodgefirm.com

          */s/ Patrick M. Kemp*
          Patrick M. Kemp